JUDGE SULLIVAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 07 CV 11055

-------------------------------------------------------------------x

DARRYL WILLIAMS,

Plaintiff,

– against –

CITY OF NEW YORK; COMMISSIONER MARTIN F. HORN;
CHIEF OF DEPARTMENT CAROLYN THOMAS; DEPUTY
COMMISSIONER RICHARD R. WHITE; OFFICER STEVEN
SARNO, SHIELD NO. 16084; OFFICER VERNAL ELCOCK,
SHIELD NO. 14207; OFFICER MONIQUE SHEPPARD,
SHIELD NO. 9215; and JOHN DOES 1-10,

Defendants.

-------------------------------------------------------------------x

**COMPLAINT AND
JURY DEMAND**



RECEIVED
DEC 0 6 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff Darryl Williams, by and through his attorneys, Emery Celli Brinckerhoff & Abady LLP and the Legal Aid Society Prisoners' Rights Project, for his Complaint alleges as follows:

## PRELIMINARY STATEMENT

1.       This is a civil rights action for excessive force, assault, battery, and other tortious conduct cognizable under federal and state law.

2.       On or about December 8, 2006, Plaintiff – who was then an inmate at Rikers Island awaiting disposition of criminal charges -- was brutally, wantonly, and unjustifiably assaulted by at least two corrections officers of the New York City Department of Correction ("DOC") while shielded from the view of other prisoners and staff members in the receiving room where he was beaten.

3.       Defendants beat Plaintiff so viciously that he suffered, among other things, a fractured jaw, fractured facial bones, a torn earlobe, and numerous bruises and lacerations. Plaintiff's fractured jaw required surgery to repair, and he was kept in the hospital for over six days.

4.       The manner in which Defendants inflicted their sadistic beating of Plaintiff is consistent with an oft-recurring pattern of abuse on Rikers Island: correction officers regularly drag prisoners on whom they wish to prey from populated areas to unpopulated areas in order to assault the prisoners in the absence of witnesses and, thus, with perceived impunity. That is precisely what happened to Darryl Williams, who was forcibly removed from a crowded inmate mess hall (where there were many potential inmate witnesses) to an isolated search room, where he was viciously beaten and severely injured.

5.       The nature and extent of Plaintiff's injuries alone demonstrates that his assault was an audacious violation of his rights under the United States Constitution and New York common law.

**THE PARTIES**

6.       Plaintiff Darryl Williams is a citizen of the United States who resided at Rikers Island in Bronx County at the time these events occurred. Plaintiff is presently incarcerated in the Sing Sing Correctional Facility in Ossining, New York.

7.       Defendant City of New York (the "City") is a municipal corporation which, through its Department of Correction ("DOC" or the "Department"), operates a number of detention jails. The Department, through its senior officials at the central office, in each facility,

and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting, and investigation of force by uniformed staff, and access to medical and other program services mandated by local law and court orders. In addition, senior officials in the Department are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten Department policies or customs. The Department is also responsible for the appointment, training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. In addition, at all relevant times, the City was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York.

8.      At all times relevant hereto, Martin Horn was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, Defendant Horn, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. As Commissioner, defendant Horn is also responsible for the care, custody, and control of all inmates housed in the Department's jails. As Commissioner, Horn was provided, on a daily basis, with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails. In addition, at all relevant times, Defendant Horn was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey

the laws of the United States and of the State of New York. Defendant Horn is sued in his individual capacity.

9.      At all times relevant hereto, Carolyn Thomas was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. As Chief of Department, she was the highest ranking uniformed member of the Department, and was responsible for the supervision, oversight, and discipline of the uniformed security staff in all the Department jails. She was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, Thomas is provided, on a daily basis, with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant Thomas is sued in her individual capacity.

10.      At all times relevant hereto, Richard R. White was the Deputy Commissioner of the Department, Investigation Division. As Deputy Commissioner, his responsibilities included supervising the investigation of any and all incidents in which any employee of the Department used force against any inmate, or is alleged to have used force, and recommending Department discipline against staff believed to have violated Department policies and rules including those concerning use of force. Defendant White was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other breaches of security in Department jails. Defendant White is sued in his individual capacity.

11.      At all times relevant hereto, Correction Officer Steven Sarno, Shield No. 16084, a correction officer of the DOC, acted in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. On information and belief, Correction

4

Officer Sarno worked at the Otis Bantum Correctional Center ("OBCC") at the time of this incident.

12.    At all times relevant hereto, Correction Officer Vernal Elcock, Shield No. 14207, a correction officer of the DOC, acted in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. On information and belief, Correction Officer Elcock worked at the Otis Bantum Correctional Center ("OBCC") at the time of this incident.

13.    At all times relevant hereto, Correction Officer Monique Sheppard, Shield No. 9215, a correction officer of the DOC, acted in the capacity of agent, servant, and employee of the City, and within the scope of his employment as such. On information and belief, Correction Officer Sheppard worked at the Otis Bantum Correctional Center ("OBCC") at the time of this incident

14.    At all times relevant hereto, John Does 1-10, whose actual names and/or shield numbers Plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe," were employees of DOC, acting in the capacity of agents, servants, and employees of defendant City, and within the scope of their employment as such.

## JURISDICTION AND VENUE

15.    This action arises under the Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988 and under New York State common law.

5

16.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.

17.    The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

18.    Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

19.    On or about December 8, 2006, Plaintiff was incarcerated in a mental observation housing area in OBCC at Rikers Island in Bronx County, New York.

20.    At or about approximately 6:00 a.m. on that day, Plaintiff was in the OBCC mess hall seeking to get his breakfast. Plaintiff was standing on line to get a tray of food when he decided to step off the food line briefly to get a cup of Kool-Aid or juice. After getting a cup of Kool-Aid or juice, Plaintiff returned to the food line to get his breakfast.

21.    Defendant Sarno confronted Plaintiff, asserting falsely that Plaintiff had already gotten his food and was improperly seeking to get a second tray of food. Plaintiff explained to Defendant Sarno that he had only left the food line for a moment to get a cup of juice and that he actually had not gotten his food yet.

22.    Notwithstanding Plaintiff's explanation, Defendant instructed Plaintiff to leave the food line. Plaintiff, believing he was entitled to eat, took a tray of food anyway. Defendant Sarno then instructed Plaintiff to leave the mess hall without eating and return to his dorm, but Plaintiff refused.

23.     Defendant Sarno then grabbed Plaintiff and threw him against the wall. The force that Defendant Sarno exerted caused Plaintiff to drop his tray of food and his cup of juice. Plaintiff, fearing for his safety, resisted Defendant Sarno's efforts to force him against the wall.

24.     Defendant Sarno responded by grabbing Plaintiff, punching him, and attempting to take him to the ground. Plaintiff resisted. Within seconds, Defendant Elcock joined Defendant Sarno in grabbing Plaintiff, punching him, and attempting to take him to the ground.

25.     At no time prior to this assault did Plaintiff make any aggressive gesture toward any officer or present any risk of harm to any officer.

26.     Though she could have and should have, Defendant Sheppard, who witnessed the incident, did nothing to stop this unjustified attack on Plaintiff.

27.     Defendants Sarno and Elcock – together with an unknown number of additional corrections officers – pulled Plaintiff out of the mess hall and out of view of the people in the mess hall.

28.     Defendants Sarno and Elcock and these unknown officers took Plaintiff to the jail's receiving room, where they forced him into an isolated search room shielded from view of other prisoners in the receiving room. Once in this isolated search room, Defendants Sarno and Elcock and these unknown officers threw Plaintiff to the ground and beat him savagely. They punched and kicked Plaintiff repeatedly to the face, head, and torso areas.

29.     Defendants Sarno and Elcock and these unknown officers eventually handcuffed Plaintiff, who was badly injured, and threw him into a cell in the receiving room.

30.    Plaintiff did not provoke this beating, nor did he conduct himself in any manner that would have warranted the force that was used. Defendants Sarno and Elcock and these unknown officers acted sadistically and maliciously and demonstrated deliberate indifference toward Plaintiff's rights and physical well-being.

31.    Notwithstanding the fact that Plaintiff was obviously severely injured, Defendants did nothing to help him. They did not take Plaintiff to the medical clinic for treatment.

32.    Plaintiff was eventually taken to the medical clinic several hours later, after which he was rushed to Elmhurst Hospital for emergency treatment.

33.    Plaintiff remained at Elmhurst Hospital for six days. During that period, he underwent surgery – open reduction internal fixation – to repair a fractured jaw. He also received treatment for fractured facial bones, a partially torn ear – which required numerous stitches to reattach – and a variety of bruises and lacerations.

34.    Plaintiff suffered immensely from this ordeal, both physically and emotionally.

35.    Physically, Plaintiff experienced excruciating pain during and subsequent to his hospitalization. Following the surgery, Plaintiff's jaw was wired shut for several weeks, precluding his ability to eat solid foods. When the wire was eventually removed, a small piece of wire was inadvertently left embedded in his mouth tissue. This caused his mouth to become severely swollen and infected, which caused Plaintiff tremendous pain until the problem was diagnosed and corrected weeks later.

36.     Plaintiff also suffers from depression and anxiety as a result of his beating on December 8, 2006.

37.     The City and DOC supervisors, including Defendants Horn, Thomas, and White, knew or should have known that defendants Sarno and Elcock had been involved in a large number of applications of force on prisoners prior to the beating of Plaintiff..

38.     For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail New York City Department of Correction.

39.     For example, *Sheppard v. Phoenix*, 210 F. Supp.2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit. That litigation unearthed abuse of prisoners and its cover-up sufficiently serious to merit criminal prosecution.

40.     *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the widespread practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who have been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice, and supervision of agency staff and investigators, and changes in the Department's use of force policy.

41.     Through DOC's elaborate reporting system, Defendants Horn, Thomas, and White were aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force resulting in serious injuries to inmates and have failed to take

9

sufficient steps to curb these abuses. They were also aware of the propensity for excessive force to be used in isolated areas, such as search rooms, but did not take sufficient steps to curb these abuses.

42.     The Department and Defendants Horn, Thomas, and White have also been made aware of the near-refusal of the Department to bring disciplinary charges against its officers who use excessive force and fail to report excessive force of other officers.

43.     Through all these cases and Department reports, DOC and its supervisors have been made aware of the widespread practice by DOC staff of using excessive and/or unnecessary force to injure, and not restrain, inmates. The Commissioner, the Chief of Department, and the Deputy Commissioner in charge of the Investigations Division have been made aware of the longstanding failures of the Investigation Division to adequately investigate use of force incidents, including those in which inmates were severely injured, allegations of staff misconduct, and the de facto refusal of the Department to bring effective disciplinary charges against its errant officers. These failures lead staff members to believe that they can assault and injure prisoners with impunity, and were a direct and proximate cause of Plaintiff's injuries.

44.     DOC and its supervisors – including Defendants Horn, Thomas, and White – cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

45.     The Department has not taken sufficient steps to curb the abuse that occurs routinely in New York City jails. Indeed, it allows that abuse to persist through inadequate

investigations of allegations of use of force incidents and allegations of staff misconduct and the

failure to discipline officers in the face of obvious wrongdoing.

46.    A timely and proper written notice of claim was filed with the

Comptroller's Office at 1 Centre Street, New York, New York.

47.    This action has been commenced within one year after the happening of

the event upon which the claims are based.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983
(Against All Individual Defendants)

48.    Plaintiff repeats and realleges each of the foregoing paragraphs as if they

were fully set forth at length herein.

49.    By reason of the foregoing, and by assaulting, battering, and using

gratuitous and excessive force and punishment, and by failing to give Plaintiff prompt and

adequate medical attention, Defendants deprived Plaintiff of rights, remedies, privileges, and

immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983,

including, but not limited to, rights guaranteed by the Eighth and Fourteenth Amendments of the

United States Constitution.

50.    In addition, Defendants conspired among themselves to deprive Plaintiff

of his constitutional rights secured by 42 U.S.C. § 1983, and by the Eighth and Fourteenth

Amendments to the United States Constitution, and took numerous overt steps in furtherance of

such conspiracy, as set forth above.

11

51.    In addition, Defendants failed to take reasonable steps to intervene on

Plaintiff's behalf to prevent the deprivation of Plaintiff's constitutional rights secured by 42

U.S.C. § 1983 and by the Eighth and Fourteenth Amendments to the United States Constitution.

52.    In addition, Defendants were deliberately indifferent to Plaintiff's serious

medical needs in violation of Plaintiff's constitutional rights secured by 42 U.S.C. § 1983 and by

the Eighth and Fourteenth Amendments to the United States Constitution.

53.    Defendants acted under pretense and color of state law and in their

individual and official capacities and within the scope of their employments as DOC officers.

Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and

in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific

intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the

Eighth and Fourteenth Amendments of the United States Constitution.

54.    Defendants Horn, Thomas, and White knew and/or know that the pattern

of physical abuse described above existed in the City jails prior to and including the time of the

assault on plaintiff. Their failure to take measures to curb this pattern of brutality constitutes an

acquiescence in the known unlawful behavior of their subordinates. The prevalence of these

practices and general knowledge of their existence at the time of plaintiff's beating, and the

failure of these defendants to take remedial action despite the fact that the misuse of force in City

jails, and in circumstances such as these, had been persistently brought to their attention,

constitutes deliberate indifference to the rights and safety of the inmates in their care and

custody, including the inmate named as a plaintiff in this action. These Defendants' conduct has

been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint.

55.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A SECOND CLAIM FOR RELIEF
42 U.S.C. § 1983
(Against the City)

56.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

57.    Defendant City, through DOC, and acting under the pretense and color of law, has permitted, tolerated, and been deliberately indifferent to a pattern and practice of staff brutality at OBCC.  This widespread tolerance of correction officer abuse of prisoners constitutes a municipal policy, practice, or custom and led to the assault of the Plaintiff.

58.    By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which Plaintiff was subjected to a brutal beating, Defendant City has deprived Plaintiffs of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Eighth and Fourteenth Amendments to be free from gratuitous and excessive force and retaliation.

59.    Defendant City, through DOC, and acting under the pretense and color of law, has permitted, tolerated, and been deliberately indifferent to a pattern and practice of correction officers assaulting prisoners in unpopulated areas devoid of witnesses.  This

widespread tolerance of corrections officer abuse of prisoners constitutes a municipal policy or

practice and led to Plaintiff's assaults.

60.     By permitting, tolerating and sanctioning these persistent and widespread

policies, practices, and customs, Defendant City has deprived Plaintiff of the rights, remedies,

privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C.

§ 1983, including, but not limited to, rights guaranteed under the Eighth and Fourteenth

Amendments to be free from gratuitous and excessive force and retaliation.

61.     As a direct and proximate result of the policy, practice, and custom

detailed above, Plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A THIRD CLAIM FOR RELIEF
Assault and Battery
(Against All Defendants)

62.     Plaintiff repeats and realleges each of the foregoing paragraphs as if they

were fully set forth at length herein.

63.     In assaulting, battering, and threatening Plaintiff, the Defendants, acting in

their capacities as DOC officers, and within the scope of their employment, each committed a

willful, unlawful, unwarranted, and intentional assault and battery upon Plaintiff.

64.     The assault and battery by these Defendants was unnecessary and

unwarranted in the performance of their duties as DOC officers and constituted an unreasonable

and excessive use of force.

65.     Defendants, their officers, agents, servants, and employees were responsible for Plaintiff's assault and battery.  Defendant City, as employer of each of the Defendants, is responsible for their wrongdoing under the doctrine of <u>respondeat superior</u>.

66.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
Negligent hiring/training/retention of
Employment Services
(Against Defendant City)

67.     Plaintiff repeats and realleges each of the foregoing paragraphs as if they were fully set forth at length herein.

68.     Defendant City, through the DOC, owed a duty of care to Plaintiff to prevent the conduct alleged because under the same or similar circumstances a reasonable, prudent, and careful person should have and would have anticipated that injury to Plaintiff or to those in a like situation would probably result from the foregoing conduct.

69.     Upon information and belief, all of the Defendants were unfit and incompetent for their positions.

70.     Upon information and belief, Defendant City knew or should have known through the exercise of reasonable diligence that the Defendants were potentially dangerous.

71.     Upon information and belief, Defendant City's negligence in screening, hiring, training, disciplining, and retaining these Defendants proximately caused each of Plaintiff's injuries.

72.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.


WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

1.    an order awarding compensatory and other damages to Darryl Williams in an amount to be determined at trial;

2.    an order awarding punitive damages against the individual defendants in an amount to be determined at trial;

3.    reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and 42 U.S.C. § 1997e(d); and

4.    an order directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: December 6, 2007
     New York, New York

                 Respectfully submitted,


                 EMERY CELLI BRINCKERHOFF
                 & ABADY LLP

                 By: _____
                     Eric Hecker (EH 0989)

                 545 Madison Avenue, 3rd Floor
                 New York, N.Y. 10022
                 (212) 763-5000

                 THE LEGAL AID SOCIETY
                 Jonathan S. Chasan (JC 9018)
                 Mary Lynne Werlwas (MW 6403)
                 199 Water Street, 6th Floor
                 New York, New York 10038
                 (212) 577-3530

                 *Attorneys for Plaintiff*